IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DEANDRA MARIE SPIESS,**

      **Plaintiff,**

v.                                                                    No. CIV-14-0486 LAM

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

      **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing With Supportive Memorandum (Doc. 17)*, filed January 30, 2015 (hereinafter, collectively, "motion"). On May 5, 2015, Defendant filed a response to the motion [*Doc. 21*], and, on May 18, 2015, Plaintiff filed a reply. [*Doc. 22*]. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case (*Docs. 5* and *7*). The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 12*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

## I.   Procedural History

On December 14, 2010, Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB") alleging that she became disabled on August 7, 2009.  [*Doc. 12-7* at 2-5]. Plaintiff stated that she became disabled due to: PTSD, OCD, anxiety, and depression. [*Doc. 12-8* at 6].  Plaintiff's application was denied at the initial level on February 10, 2011 (*Doc. 12-5* at 16-20), and was denied at the reconsideration level on July 19, 2011 (*id.* at 22-24). Pursuant to Plaintiff's request (*id.* at 25-26), Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing on August 22, 2013.   [*Doc. 12-3* at 32-65].   At the hearing, Plaintiff was present, was represented by counsel, and testified.  *Id.* at 34, 38-55.   In addition, Vocational Expert (hereinafter "VE"), Mr. Griner, was present and testified.  *Id.* at 34, 55-60.

On September 27, 2013, the ALJ issued her decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 12-3* at 17-31].   On March 21, 2014, the Appeals Council denied Plaintiff's request for review (*id.* at 2-7), which made the ALJ's decision the final decision of the Commissioner.   On May 22, 2014, Plaintiff filed her complaint in this case.   [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).   If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004);

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084  (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a).  In light of this definition for disability, a five-step sequential evaluation

process (SEP) has been established for evaluating a disability claim. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on July 19, 1977. [*Doc. 12-7* at 2]. Plaintiff has worked as a caregiver and dental assistant. [*Doc. 12-8* at 7]. Plaintiff alleges that she is unable to work because of PTSD, OCD, anxiety, and depression. *Id.* at 6. Plaintiff's medical records include: a Consultative Psychiatric Examination by Paula Hughson, M.C., dated January 31, 2011 (*Doc. 12-10* at 20-25); a Psychiatric Review Technique by Elizabeth Chiang, M.D., dated February 2, 2011 (*id.* at 27-40); a Mental Residual Functional Capacity Assessment by Elizabeth Chiang, M.D., dated February 1, 2011 (*id.* at 41-44); a Case Analysis by Robert F. Schilling, Ph.D., P.A., dated July 15, 2011 (*id.* at 46); and a Psychological Evaluation by Shari Spies, Psy. D., dated October 12, 2010 (*Doc 12-11* at 20-23. Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of August 7, 2009. [*Doc. 12-3* at 19]. At step two, the ALJ found that Plaintiff has the following severe impairments: posttraumatic stress disorder (PTSD), polysubstance abuse, cyclothymia, and a personality disorder with antisocial, paranoid, and borderline traits. *Id.* At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). *Id.* at 20.

Before step four, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "[Plaintiff] can make simple work-related decisions with few workplace changes[;] [s]he should have no contact with the public and only occasional and superficial contact with co-workers." *Id.* at 21. In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id.* at 22. The ALJ gave moderate weight to the opinions of Paula Hughson, M.D. (*id.* at 23), and gave great weight to the opinions of the state agency consultants Elizabeth Chiang, M.D. and Robert F. Schilling, Ph.D. (*id.* at 24-25). At step four, the ALJ found that Plaintiff is unable to perform her past relevant work, so the ALJ proceeded to the fifth step. *Id.*

At the fifth and final step, the ALJ noted that Plaintiff was born on July 19, 197, so she was 32 years old on the alleged disability onset date, which is defined as a younger individual. *Id.* The ALJ noted that Plaintiff has at least a high school education and is able to communicate in

5

English.  *Id.*  The ALJ stated that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."  *Id.* (citing Soc. Sec. Rep. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).  The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.  *Id.*  The ALJ stated that she asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as the following: cleaner (housekeeping), cuff folder, and final assembler.  *Id.* at 26.  The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.*  The ALJ concluded that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  *Id.*  The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act.  *Id.*

## V.   Analysis

In her motion to reverse or remand, Plaintiff contends that the ALJ erred by: (1) failing to properly consider relevant medical evidence from Dr. Spies, Dr. Hughson, and Dr. Chiang (*Doc. 17* at 14-20); (2)  failing to properly consider all of the evidence in the record regarding Plaintiff's mental limitations (*id.* at 21-23); and (3) failing to provide an appropriate hypothetical to the VE that included all of Plaintiffs' limitations (*id.* at 23-24).  In response, Defendant contends that the ALJ reasonably evaluated the relevant medical evidence.  [*Doc. 21* at 9-14].

### A.  Consideration of Medical Evidence

#### *1. Dr. Spies' Opinion*

Plaintiff first contends that the ALJ erred by failing to include the limitations found by Dr. Spies and by failing to state what weight she gave Dr. Spies' opinions. [*Doc. 17* at 16]. In response, Defendant states that there is no evidence that Dr. Spies can be considered a treating physician whose opinion is entitled to controlling weight. [*Doc. 21* at 9-10]. Defendant further contends that any oversight by the ALJ to assign a specific weight to Dr. Spies' opinion is inconsequential because her opinion is consistent with the ALJ's RFC determination. *Id.* at 10. In reply, Plaintiff states that the ALJ's failure to assign a specific weight to Dr. Spies' opinion is not harmless error because Dr. Spies' opinion differs from the opinion provided by Dr. Chiang and the ALJ failed to explain how she resolved this contradiction. [*Doc. 22* at 1-2].

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. § 404.1545(a)(1). *See also* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. Soc. Sec. Rep. 96-8p at *5. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ "must also explain how any material

inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions. *Id.* Because the ALJ must consider the whole record, he is prohibited from "pick[ing] and choos[ing] among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted). When there are multiple opinions regarding medical severity and functional ability from different sources, the ALJ must explain the weight given to each source's opinions. *Hamlin*, 365 F.3d at 1215 (citation omitted).[1]

   Here, Dr. Spies opined that Plaintiff has moderate limitations in her ability to get along with supervisors and co-workers, and marked limitations in her ability to interact with the public. [*Doc. 12-11* at 23]. The limitation regarding Plaintiff's ability to interact with supervisors is not accounted for in the ALJ's RFC determination. *See* [*Doc. 12-3* at 21 and 23]. While Defendant contends that the ALJ did not err in her consideration of Dr. Spies' opinions because Dr. Spies cannot be considered a treating physician (*see Doc. 21* at 9-10), this is an impermissible *post hoc* rationalization. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted). The Court, therefore, finds that the ALJ erred in failing to properly address Dr. Spies' opinion regarding Plaintiff's

---

[1] The Court has repeatedly recited these requirements for RFC assessments in appeals of ALJ Ann Farris' decisions, and she has repeatedly failed to follow them. *See Garcia v. Colvin*, No. CIV-14-0049 LAM, *Cordova v. Colvin*, No. CIV-13-0709 LAM, *Bell v. Colvin*, No. CIV-13-433 LAM, and *Muller v. Colvin*, No. CIV-12-538 LAM. The Court notes that ALJ Farris may have reached the correct decision in each of these cases but the Court was required to remand the decisions because ALJ Farris failed to follow the required analysis for consideration of medical records. ***Therefore, in light of ALJ Farris' ongoing failure to follow the proper procedures for RFC assessments, the Court directs the Commissioner, on remand, to provide ALJ Farris with a copy of this opinion in the hope that she will follow the requirements for RFC assessments in the future.***

ability to interact with supervisors.  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment); *see also* Soc. Sec. Rep. 96-8p at *7 ("The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.").  The Court, therefore, instructs the ALJ that, on remand, the ALJ shall either incorporate Dr. Spies' findings into Plaintiff's RFC assessment, or sufficiently explain why they are rejected.

### 2. *Dr. Hughson's and Dr. Chiang's Opinions*

Next, Plaintiff contends that the ALJ erred by failing to properly consider Dr. Hughson's opinion because the ALJ failed to explain why she gave more weight to the opinion of Dr. Chiang than to the opinion of Dr. Hughson.  [*Doc. 17* at 17-20].  In response, Defendant contends that Dr. Hughson's opinion corresponds with Section I of the agency's Mental RFC Assessment form and, thus, is merely a worksheet to aid in deciding the presence and degree of limitations, and does not constitute the RFC assessment.  [*Doc. 21* at 13].  Therefore, Defendant contends that the ALJ did not err in failing to use the moderate to marked limitations found by Dr. Hughson and, instead, properly drew reasonable conclusions from Dr. Hughson's opinions.  *Id.* at 14.  In reply, Plaintiff contends that Defendant supplies an impermissible *post-hoc* rationalization for the ALJ's decision to exclude each of the limitations contained in Dr. Hughson's report.  [*Doc. 22* at 4-5].

In her Consultative Psychiatric Examination, Dr. Hughson opined that Plaintiff has: moderate limitations in her ability to use public transportation or travel to unfamiliar places; moderate to marked limitations in her abilities to understand and remember detailed or complex instructions, attend and concentrate, work without supervision, interact with co-workers and

9

supervisors, and adapt to changes in the workplace; and marked limitations in her abilities to carry out instructions and interact with the public. [Doc. 12-10 at 24]. The ALJ failed to address Dr. Hughson's opinions regarding Plaintiff's limitations in her abilities to use public transportation or travel to unfamiliar places, adapt to changes in the workplace, and carry out instructions. *See* [Doc. 12-3 at 23]. Moreover, the ALJ's RFC determination that Plaintiff can perform a full range of work, except that "[Plaintiff] can make simple work-related decisions with few workplace changes[;] [s]he should have no contact with the public and only occasional and superficial contact with co-workers" (*id.* at 21), does not account for Dr. Hughson's opinions that Plaintiff is limited in her abilities to use public transportation or travel to unfamiliar places, attend and concentrate, work without supervision, interact with supervisors, and carry out instructions. The findings of state agency medical or psychological consultants are not binding on an ALJ; however, they are medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(e)(2)(i). While Defendant contends that the ALJ did not err in rejecting portions of Dr. Hughson's opinion because it corresponds with Section I of the agency's Mental RFC Assessment Form and, thus, is merely a worksheet to aid in deciding the presence and degree of limitations (*see Doc. 21* at 13), this is an impermissible *post-hoc* rationalization. While the Tenth Circuit has found that when a state agency doctor checked a box on Section I of the Mental RFC Assessment Form indicating a moderate limitation, and then concluded in Section III that the claimant was able to perform unskilled work, the ALJ did not err in failing to mention the moderate limitations in the ALJ's RFC determination (*see Sullivan v. Colvin*, No. 12-5147, 519 Fed. Appx. 985, 989, 2013 WL 950970 (10th Cir. March 13, 2013) (unpublished)), the Court finds that this argument is not persuasive in this case. Here, Dr. Hughson's findings of marked and moderate limitations were made during a

Consultative Psychiatric Examination, not on a Mental RFC Assessment Form, and Dr. Hughson set forth no opinion in that examination, or elsewhere in the record, that Plaintiff was able to perform unskilled work despite these limitations. Moreover, Defendant fails to present any authority finding that opinions in a Consultative Psychiatric Examination are the same as those in Section I of a Mental RFC Assessment Form. For these reasons, the Court finds that the ALJ erred in failing to properly address Dr. Hughson's opinions in the Consultative Psychiatric Examination. *See Haga*, 482 F.3d at 1208 (explaining that an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment); *see also Carpenter*, 537 F.3d at 1265 (explaining that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence") (citation and internal quotation marks omitted). The Court, therefore, instructs the ALJ that, on remand, the ALJ shall either incorporate Dr. Hughson's findings into Plaintiff's RFC assessment, or sufficiently explain why they are rejected.

### B.   Plaintiff's Remaining Claims

Plaintiff's remaining claims are that: (1) the ALJ erred in her RFC determination by failing to properly consider all of the evidence in the record regarding Plaintiff's mental limitations, including Dr. Hughson's findings (*Doc. 17* at 21-23); and (2) the ALJ erred by failing to provide an appropriate hypothetical to the VE that included all of Plaintiffs' limitations (*id.* at 23-24). Inexplicably, Defendant states in her response that Plaintiff's only claims are those relating to the ALJ's evaluation of medical source opinions, ignoring Plaintiff's other two claims. *See* [*Doc. 21* at 9 and n.4]. However, in Plaintiff's reply, she does not address either of her other two claims (*see Doc 22*), which may indicate Plaintiff's intention to abandon those claims. Regardless, because the Court finds that Plaintiff's case should be remanded for further consideration of the

11

opinions of Dr. Spies and Dr. Hughson, the Court finds that it is unnecessary to reach Plaintiff's remaining claims because those claims may be affected by the ALJ's findings on remand. *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider the opinions of Dr. Spies and Dr. Hughson, as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's ***Motion to Reverse and Remand for a Rehearing With Supportive Memorandum*** *(Doc. 17)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order. A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes A. Martínez*
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**